UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHELE GETSIM, ) | |
| Plaintiff ) | Civil Action No. <u>23-10956</u> |
| v. ) | |
| 99 RESTAURANTS, LLC; ABRH, LLC; and ) | |
| RESTAURANT GROWTH SERVICES, LLC; ) | |
| Defendants ) | |

<u>COMPLAINT & JURY DEMAND</u>

NATURE OF COMPLAINT

1. As alleged more fully below, Defendants are the colossal Massachusetts chain, Ninety Nine Restaurant & Pub.  After 15 years on the job, Ms. Michele Getsim became disabled, injuring her back at work.  Ms. Getsim, by then a service manager, was able to do her job with accommodations.  In fact, she did so for *eight months without issue*.  But Defendants grew tired of accommodating Ms. Getsim, and of paying a living wage to a disabled person.  When she declined to work for a lower hourly rate and without health insurance, on which her disabled husband relied, Defendants fired Ms. Getsim.  Cost was not an issue.  Defendants, from Tennessee, make *bookoo bucks* off of Massachusetts restaurant and bar goers.  There was but one problem here, discrimination.

PARTIES

2. Plaintiff Michele Getsim (Plaintiff or Getsim) is a natural person residing in Haverhill, Massachusetts.  From on or around March 23, 2004, through on or around June 8, 2020, Plaintiff was an employee of Defendants: 99 RESTAURANTS, LLC; ABRH, LLC; and RESTAURANT GROWTH SERVICES, LLC.

3. Defendants operate a restaurant chain with over 50 restaurants across Massachusetts doing business as "99 Restaurants," "99 Restaurant & Pub," and/or "The 99." Claims here arise from such operations. Massachusetts is by far the largest market for Defendants, they make millions of dollars here. Defendants have a corporate office in Woburn, Massachusetts, but their principal office is in Tennessee.

4. 99 Restaurants, LLC has at least 15 employees; ABRH, LLC has at least 15 employees; and Restaurant Growth Services, LLC has at least 15 employees. Defendants have at least 15 employees.

5. Defendants are a single integrated employer. Defendants handle personnel matters pursuant to the same policy and the same people carry out such policy, *e.g.*, Denise Forsberg as workers' compensation coordinator. Defendants' operations are integrated in that they share employees, services, records, office space, and equipment, commingle finances, and, upon information and belief, payroll, books, and tax returns are handled by the parent company, ABRH LLC and/or now Restaurant Growth Services, LLC.

6. Management is shared across Defendants, *e.g.*, Phillip Purcell.

7. Majority ownership is effectively the same across all Defendants, all leading to Cannae Holdings, LLC.

8. Defendants all have the same principal offices: 3038 SIDCO DR., NASHVILLE, TN 37204-4506 USA.

9. Plaintiff's paycheck was from ABRH, LLC.

10. Plaintiff's workers compensation was handled by ABRH, LLC.

11. The new name for ABRH, LLC, is Restaurant Growth Services, LLC.

12. Restaurant Growth Services, LLC was formerly ABRH, LLC.

13. Plaintiff's managers were from 99 Restaurants, LLC.

14. All Defendants knew or should have known of the illegal conduct alleged here and failed to take prompt corrective measures within their control.

## FACTS

15. In or around 2004, Plaintiff started as a server at Defendants' restaurants.

16. In or around 2016, Plaintiff began working as general manager at Defendants' Somerville restaurant.

17. In or around 2018, Plaintiff began working as service manager with the same pay as general manager at Defendants' Lowell restaurant.

18. On or around October 29, 2019, Plaintiff injured her back while working for Defendants, putting away food goods and other store goods. Such was not an essential function of her job.

19. Plaintiff took five days off from work. Plaintiff returned to work thereafter. Plaintiff continued to suffer tremendous pain.

20. Plaintiff learned that she had bulging disk in her spine.

21. On or around December 5, 2019, Plaintiff's doctor recommended the following restrictions: no lifting over 5 lbs and limit work hours to 5 hour day, 3 days/week, every other day during work week until further notice. Thus, Plaintiff could work only 15 hours per week.

22. Plaintiff provided such documentation to her manager who approved the accommodation. From then on, Plaintiff worked with such accommodations, performing the essential functions of her job without undue expense to Defendants. Defendants reduced

Plaintiff's pay accordingly, *i.e.*, from 40 down to 15 hours per week, but they did not change her hourly rate.

23. In February 2020, Defendants sent Plaintiff a Leave of Absence Notice stating that Defendants were placing Plaintiff on intermittent FMLA leave retroactively back to December 9, 2019, that Plaintiff's reduction by 25 hours per week (from 40 to 15) would come out of her 480 hours of eligible FMLA time.  Plaintiff had not applied for FMLA.  Plaintiff signed this because told she "MUST" do so.

24. In March, 2020, Defendants' closed to in-person dining because of the Massachusetts Covid emergency orders, but continued to fill takeout orders.  Plaintiff continued to work with accommodations.

25. On May 5, 2020, Defendants informed Plaintiff that she had exhausted her FMLA benefits on April 26, 2020.  Defendants informed Plaintiff, however, that she could continue to work with accommodation.  Defendants informed Plaintiff they would reassess whether Plaintiff could perform essential functions of the job once it resumed normal business operations.

26. On June 3, 2020, Plaintiff informed Defendants that she continued to suffer pain from her condition and that she had a doctor's appointment on June 5, 2020.

27.  Shortly thereafter, Defendants told Plaintiff she had two options: (i) return to work at full capacity with clearance from doctor; or (ii) step down from management to hourly position without benefits and with significant cut in hourly rate.  Defendants had previously told Plaintiff she could go out on extended LOA because of back injury, but now told her this was not an option.  Plaintiff replied that she was unsure what to do.

28. On June 5, 2020, Plaintiff informed Defendants that she did not have medical clearance to return to work without accommodation and that she could not afford to step down to an hourly position without benefits, most notably health insurance, as she has a disabled husband and a daughter in college.

29. On June 8, 2020, Defendants terminated Plaintiff's employment by letter.  The letter stated that Defendants could not continue to accommodate Plaintiff with reduced schedule and that because Plaintiff would not step down to hourly position without benefits, Plaintiff could not perform the essential functions of the job.

30. On June 8, 2020, Defendants location at which Plaintiff worked (Tewksbury) had not resumed normal business operations.

31. On June 8, 2020, Defendants' location at which Plaintiff worked (Tewksbury) was still take-out only.

32. On June 8, 2020, Defendants could have accommodated Plaintiff without undue expense.

33. Defendants could accommodate Plaintiff without undue expense even after the eventual return to in-person dining, as they had done before any pandemic or impact therefrom.

34. Plaintiff was capable of performing the essential functions of the job with accommodation, as proven since December 5, 2019, when she worked with accommodation around three months *before* Defendants closed to in-person dining because of the Covid pandemic.  Manager shifts normally overlapped such that Plaintiff could perform the essential functions of the job with accommodation, *e.g.*, work shorter shifts.

35. From time of injury through time of Plaintiff's termination and onwards, Plaintiff's injury substantially limits her ability to: Perform manual tasks; walk longer distance; stand (not

for prolonged periods of time, pain is like someone stabbed her with a knife); sit (not for prolonged periods of time, pain is like someone stabbed her with a knife); lift (pain is like someone stabbed her with a knife if lifts too much); and work, among other major life functions.

36. Accommodating Plaintiff was not an undue expense, Defendants had accommodated Plaintiff since December 5, 2019, when she worked with accommodation around three months *before* Defendants closed to in-person dining.

37. Defendants here make boatloads of money – *their name is advertised on the Green Monster.*[1]  Accommodating Plaintiff, a long-tenured employee, after she became disabled was not only the lawful way to act, it was the *right* way to act, and it wouldn't have cost them more than a few pennies – if that – compared to the millions upon millions they rake in from Massachusetts restaurant and bar goers.  The discrimination here was wholly unnecessary – malicious and intentional.

38. Defendants could have given Plaintiff leave under the Paycheck Protection Program (PPP) without any expense, but did not do so because of intentional discrimination. Again, malicious and intentional.

39. Defendants could have continued Plaintiff's reduced schedule without any added expense.  Defendants had *not* been paying Plaintiff for the unworked 25 hours per week.

40. Plaintiff satisfied all administrative requirements, *e.g.*, timely filed a charge with MCAD and EEOC and waited more than the requisite time to file this complaint.

CAUSATION AND HARM

---

[1]   Nickname for the left field wall at Fenway Park.

41. Defendants' actions described herein caused significant monetary and nonmonetary harm, *e.g.*, lost wages and emotional distress, in value well north of $75,000.

## COUNT ONE
## DISABILITY DISCRIMINATION MASSACHUSETTS LAW

42. Plaintiff realleges and incorporates Paragraphs 1 - 41 as if fully set forth herein.

43. Defendants discriminated against Plaintiff, *e.g.*, terminated her employment, because of disability – actual, regarded as, and record of.

44. The conduct set forth in this count constitutes disability discrimination in violation of M.G.L. c. 151B, § 4.

## COUNT TWO
## FAILURE TO ACCOMMODATE MASSACHUSETTS LAW

45. Plaintiff realleges and incorporates Paragraphs 1 - 41 as if fully set forth herein.

46. Defendants failed to accommodate Plaintiff's disability.

47. The conduct set forth in this count constitutes failure to accommodate and/or engage in interactive process in violation of M.G.L. c. 151B, § 4.

## COUNT THREE
## RETALIATION MASSACHUSETTS LAW

48. Plaintiff realleges and incorporates Paragraphs 1 - 41 as if fully set forth herein.

49. Defendants retaliated against Plaintiff for requesting accommodation.

50. Defendants retaliated against Plaintiff for opposing disability discrimination.

51. The conduct set forth in this count constitutes retaliation in violation of M.G.L. c. 151B, § 4.

## COUNT FOUR
## DISABILITY DISCRIMINATION FEDERAL LAW

52. Plaintiff realleges and incorporates Paragraphs 1 - 41 as if fully set forth herein.

53. Defendants discriminated against Plaintiff, *e.g.*, terminated her employment, because of disability – actual, regarded as, and record of.

54. The conduct set forth in this count constitutes disability discrimination under federal law, the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., 42 U.S.C. § 12112.

## COUNT FIVE
## FAILURE TO ACCOMMODATE FEDERAL LAW

55. Plaintiff realleges and incorporates Paragraphs 1 - 41 as if fully set forth herein.

56. Defendants failed to accommodate Plaintiff's disability.

57. The conduct set forth in this count constitutes failure to accommodate and/or engage in interactive process under federal law, the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., 42 U.S.C. § 12112(b)(5)(A).

## COUNT SIX
## RETALIATION FEDERAL LAW

58. Plaintiff realleges and incorporates Paragraphs 1 - 41 as if fully set forth herein.

59. Defendants retaliated against Plaintiff for requesting accommodation.

60. Defendants retaliated against Plaintiff for opposing disability discrimination.

61. The conduct set forth in this count constitutes retaliation under federal law, the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., 42 U.S.C. § 12203(a).

## REQUESTS FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

62. Enter judgment in Plaintiff's favor on all Counts;

63. Award compensatory damages;

64. Award emotional damages;

65. Award punitive damages;

66. Award the costs of this action;

67. Award reasonable attorneys' fees;

68. Award all permissible legal interest; and

69. Order such further relief as this Court deems just and proper.

## JURY CLAIM

70. Plaintiff hereby demands a trial by jury on all counts that are so triable.

Respectfully submitted,
Plaintiff,
By her attorney,


 /s/ Lucas Newbill
Lucas Newbill, BBO No. 697176

Law Offices of Lucas Newbill
P.O. Box 1741
Brookline, Massachusetts 02446
Tel. 617-918-7567
Fax. 617-910-2514
lucas@lucasnewbill.com

Date: May 1, 2023